UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | :   Case No. 2:18-cv-02652 |
| | : |
| DEER CREEK LOTS 1, 3 AND 6 07 A, LLC, | : |
| a Kansas limited liability company; | : |
| | : |
| FOUR B CORP., a Kansas corporation; and | : |
| | : |
| PAN KANSAS LLC, a Delaware limited | : |
| liability company; | : |
| | : |
| Defendants. | : |
| _____ | : |

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, DEER CREEK LOTS 1, 3 AND 6 07 A, LLC, a Kansas limited liability company; FOUR B CORP., a Kansas corporation; and PAN KANSAS LLC, a Delaware limited liability company, (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2. Defendant DEER CREEK LOTS 1, 3 AND 6 07 A, LLC's property, Deer Creek Marketplace, is located at or near 6750 West 135th Street, Overland Park, Kansas 66223, in

Johnson County ("Deer Creek Marketplace").

3.      The Defendant DEER CREEK LOTS 1, 3 AND 6 07 A, LLC's property, the Deer Creek Marketplace, is located in and does business within this judicial district.

4.      The Defendant DEER CREEK LOTS 1, 3 AND 6 07 A, LLC's owns, leases, leases to, or operates the Deer Creek Marketplace and places of public accommodation therein.

5.      The Defendant FOUR B CORP. owns, leases, leases to, or operates a Hen House in the Deer Creek Marketplace with an address of 6900 West 135th Street, Overland Park, Kansas 66223 ("Hen House").

6.      The Defendant PAN KANSAS LLC owns, leases, leases to, or operates a Panera Bread restaurant in the Deer Creek Marketplace with an address of 6800 West 135th Street, Overland Park, Kansas 66223 ("Panera").

7.      Venue is proper in the District of Kansas, Kansas City Division because the situs of the Defendants' property, store and restaurant lie in this judicial district.

8.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

9.      Defendants each own, lease, lease to, or operate places of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

10.     The Deer Creek Marketplace is a place of public accommodation.

11.     Hen House is a place of public accommodation.

12.     Panera is a place of public accommodation.

13.     Defendants are responsible for complying with the obligations of the ADA.

14.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an

individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

15.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who both live in such area.

16.     The Plaintiff, Fred Nekouee, has visited, bought goods, and sought to avail himself of the goods and services at the Hen House and Panera on July 12, 2018 in the Deer Creek Marketplace, which form the basis of this lawsuit, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships he visits, to the home of his uncle and cousin he visits in the Kansas City area, and to the hotels he stays at in the Kansas City area.

17.     The Plaintiff also stayed and visited the Kansas City area near the Deer Creek Marketplace in March 2018 and in September 2018.

18.     The Plaintiff has definite plans to next return to the Kansas City area in December 2018 or early January 2019.

19.     The Plaintiff enjoys casual dining and likes to eat at medium-priced restaurants with fast service while he is traveling like Panera.

20.     The Plaintiff plans to return to eat at Panera in the Deer Creek Marketplace, but is deterred from eating there until the barriers to access he encountered there are removed.

21.     The Plaintiff likes to bring back grocery items to his hotel while traveling, and he enjoys the goods at Hen House.

22.     The Plaintiff is deterred from returning to this Hen House in the Deer Creek Marketplace until it is made accessible to him in his wheelchair.

23.     The Plaintiff plans to return to the Deer Creek Marketplace on his upcoming visits to the Kansas City metropolitan area since it close to the hotels he stays at in such area.

24.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, and have impaired and denied him the full use of the men's and women's restrooms in Hen House and Panera, and have impaired and denied his access to the goods and services at Hen House, Panera, and the Deer Creek Marketplace.

25.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

26.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

27.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep cross slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

28.     On his visits to Hen House and Panera at the Deer Creek Marketplace, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

29.     The Plaintiff encountered barriers to access in the men's and women's restrooms in

Hen House and Panera.

30.    After encountering barriers to access in the men's restroom in Hen House, the Plaintiff tried the women's restroom in Hen House.

31.    After encountering barriers to access in the men's restroom in Panera, the Plaintiff tried using the women's restroom in Panera.

32.    The Plaintiff is deterred from visiting the Deer Creek Marketplace, Hen House, and Panera even though he enjoys their goods and services, because of the difficulties he will experience there until the property and places of public accommodation are made accessible to him in a wheelchair.

33.    The Plaintiff is deterred from visiting the places of public accommodation in the Deer Creek Marketplace, even though it is close to the heavy equipment auction, heavy equipment dealerships, the home of his uncle and cousin in the Kansas City area, and to the hotels he stays at in such area, because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), and restrooms until the property is made accessible to him in a wheelchair.

34.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 36 of this Complaint.

35.    Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

36.    Fred Nekouee desires to visit the Deer Creek Marketplace, Hen House, and Panera not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have

full and equal enjoyment of the property without fear of discrimination.

37.     The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

38.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

39.     Preliminary inspections of the Deer Creek Marketplace, Hen House, and Panera show that violations exist.

40.     The violations that the Plaintiff, Fred Nekouee, personally encountered or observed on his visit to the Deer Creek Marketplace, Hen House and Panera include, but are not limited to:

                              **PARKING AREA**

        a.   In the parking lot, the parking space for disabled patrons in front of Metcalf Discount Liquor has a running slope as steep as about 1:32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

        b.   In the parking lot, the parking space for disabled patrons with van access in front of Amelia's has a cross slope as steep as about 1:28.6 (3.5%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Deer

Creek Marketplace.

    c.   In the parking lot, the parking space for disabled patrons with van access in front of Hen House has a cross slope as steep as about 1:24.4 (4.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting Hen House.

    d.   In the parking lot, the parking space for disabled patrons with van access in front of Metcalf Discount Liquor has a running slope as steep as about 1:24.4 (4.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

    e.   In the parking lot, the parking space for disabled patrons with van access in front of Amelia's has a running slope as steep as about 1:32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

    f.   In the parking lot, the parking space for disabled patrons with van access in front of Metcalf Discount Liquor has a cross slope as steep as about 1:20.8 (4.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4.   The Plaintiff observed this slope, and it deters him from visiting the Deer Creek Marketplace.

    g.   In the parking lot, the front section of the parking space for disabled patrons with van access in front of Hen House has a cross slope as steep as about 1:17.2 (5.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law

2010, ADAAG § 502.4.   The Plaintiff encountered this condition in his wheelchair, and it made him unstable while unloading from and loading into his vehicle.

h.   In the parking lot, the other parking space for disabled patrons with van access in front of Hen House has a cross slope as steep as about 1:17.9 (5.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

i.   In the parking lot, the middle section of the parking space for disabled patrons in front of Panera has a change of level and a running slope as steep as about 1:19.6 (5.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010, ADAAG §§ 502.4 and 303.3.   The Plaintiff encountered this condition, and it made him unstable in his wheelchair.

j.   In the parking lot, the middle section o the access aisle serving the parking space for disabled patrons in front of Panera has a change of level and a running slope as steep as about 1:20.8 (4.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   The Plaintiff encountered these conditions, and they made him unstable while moving in his wheelchair.

k.   In the parking lot, the parking space for disabled patrons with van access in front of Hen House has a change of level and a cross slope as steep as about 1:14.9 (6.7%), which slope is steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

l.   As shown in the photographs below, a parking space for disabled patrons with van

access in front of Hen House has a change of level and a cross slope as steep as about 1:16.3 (6.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   The Plaintiff encountered this condition, and it made him unstable in his wheelchair.





m.    As shown in the photographs below, in a parking space for disabled patrons with

van access in front of Hen House, the asphalt surface has a change in elevation of greater

than the maximum allowed change in elevation of 0.25 inches, in violation of Federal Law

2010, ADAAG §§ 502.4 and 303.2.   The Plaintiff observed this condition, and it deters

him from visiting the Deer Creek Marketplace.



n.    In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Metcalf Discount Liquor is as steep as about 1:21.7 (4.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

o.    In the parking lot, the cross slope of the access aisle serving the van accessible parking spaces in front of Hen House is as steep as about 1:17.9 (5.6%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this steep cross slope while moving in his wheelchair, and it made him unstable in his wheelchair.

p.   As shown in the photographs below, the running slope of the walking surface in front of Panera is as steep as about 1:15.4 (6.5%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this condition while moving in his wheelchair, and he required assistance to move toward Panera.





q.   Handrails are not provided around the ramps in front of Panera where the slope is steeper than a ramp run rise of 6 inches over a 10-foot length, in violation of Federal Law 2010, ADAAG §§ 405.8 and 505.   The Plaintiff observed these conditions.

r.   The cross slope of the walking surface in front of Sport Clips is as steep as about 1:13.2 (7.6%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010, ADAAG § 403.3.   The Plaintiff observed this condition, and it deters him from visiting Sport Clips and from window shopping in the Deer Creek Marketplace.

s.   The cross slope of the walking surface in front of Kyoto Sushi is as steep as about

1:13.3 (7.5%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010, ADAAG § 403.3.   The Plaintiff observed this condition, and it deters him from visiting Kyoto Sushi in the Deer Creek Marketplace.

t.   The cross slope of the walking surface in front of Hen House is as steep as about 1:13.9 (7.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this condition while moving in his wheelchair, and it made him unstable in his wheelchair.

u.   The cross slope of the walking surface in front of Metcalf Discount Liquor   is as steep as about 1:23.8 (4.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition, and it deters him from visiting the Deer Creek Marketplace.

v.   As shown in the photograph below, the running slope of the accessibility ramp towards Panera from Metcalf Discount Liquor is as steep as about 1:6.2 (16.2%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this slope while moving in his wheelchair, and he required assistance to ascend this steep slope.





w.    Handrails are not provide around the ramp from Metcalf Discount Liquor to Panera where the slope is as steep as about 16.2% in a ten foot length, a ramp run rise of about 19.44 inches, which ramp run rise is greater than the maximum allowed ramp run rise of 6 inches, in violation of Federal Law 2010, ADAAG §§ 405.8 and 505.   The Plaintiff observed this condition.

x.    The running slope of the accessibility ramp in front of Panera is as steep as about 1:9.1 (11%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this steep slope of the accessibility ramp while moving in his wheelchair, and it made it very difficult for him to move up and down this ramp in his wheelchair.   Such steep slope deters him

and other disabled individuals who require a wheelchair for mobility from visiting Panera.

y.    The slope of the accessibility parallel curb ramp run towards Panera is as steep as about 1:8.5 (11.8%), and steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff observed this condition.

**MEN'S RESTROOM—HEN HOUSE**

z.    In the men's restroom in Hen House, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff observed this condition.

aa.    In the men's restroom in Hen House, the urinal clear floor space width is about 29 inches and less than the minimum required width of 36 inches to the alcove urinal, a urinal confined on all or part of three sides where the depth is greater than 24 inches, in violation of Federal Law 2010, ADAAG §§ 305.7.1 and 305.7.2.   The Plaintiff observed this condition.

bb.    In the men's restroom in Hen House, the space between the grab bar and the toilet paper dispenser above the grab bar is about 8 inches and less than the minimum required gap of 12 inches (305 mm), in violation of federal Law 2010, ADAAG § 609.3.   The Plaintiff encountered this condition, and it made it very difficult for him to transfer to the toilet from his wheelchair and then from the toilet back to his wheelchair.

cc.    In the men's restroom in Hen House, the space between the rear wall grab bar and the toilet seat cover dispenser above the grab bar is about 7 inches and less than the minimum required gap of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   The Plaintiff encountered this condition, and it made it very difficult for him to transfer to the toilet from his wheelchair.

dd.   In the men's restroom in Hen House, the paper towel dispenser outlet is about 56 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff encountered this high outlet, and due to the height of the outlet above the finish floor, he could not use the paper towel dispenser.

ee.   In the men's restroom is Hen House, the coat hook in the toilet compartment is installed about 66 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   From his wheelchair, the Plaintiff could not use this coat hook due to its height above the floor.

ff.   In the men's restroom in Hen House, the hooks on the wall are installed at about 64 inches above the finish floor, which height is higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4. The Plaintiff observed the height of these hooks.

**WOMEN'S RESTOOM—HEN HOUSE**

gg.   In the women's restroom in Hen House, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff observed this condition.

hh.   As shown in the photograph below, in the women's restroom in Hen House, the pipes under the sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5. In his wheelchair, the Plaintiff encountered this lack of insulation when he used the sink, and due to the lack of insulation, he risked burns and injury to his legs.



ii.    In the women's restroom in Hen House, the space between the side wall grab bar and the toilet paper dispenser above this grab bar is about 9 inches and less than the required minimum space of 12 inches, in violation of Federal Law 2010, ADAAG § 609.3.   The Plaintiff observed this condition.

jj.    In the women's restroom in Hen House, the space between the side wall grab bar and the toilet seat cover dispenser above this grab bar is about 6 inches and less than the required minimum space of 12 inches, in violation of Federal Law 2010, ADAAG § 609.3. The Plaintiff observed this condition.

kk.    In the women's restroom in Hen House, the toilet paper dispenser centerline is not between a minimum of 7 inches and a maximum of 9 inches from the centerline of the front of the water closet, in violation of Federal Law 2010 ADAAG § 604.7.   The Plaintiff

observed this condition.

ll.   In the women's restroom in Hen House, the paper towel dispenser outlet is about 53 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor , in violation of Federal Law 2010, ADAAG § 308.2.1.   Due to its height above the floor, the Plaintiff could not use this paper towel dispenser after he used the sink.

mm.   In the women's restroom in Hen House, the door latch to the toilet compartment door requires tight grasping, pinching, or twisting of the wrist, and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   The Plaintiff could not open this door latch with a closed fist or loose grip.

nn.   In the women's restroom in Hen House, the hook on the wall is at about 64 inches above the finish floor and higher than the maximum height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed this condition.

oo.   In the women's restroom in Hen House, the coat hook on the accessible compartment door is at about 66 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook.

pp.   In the women's restroom in Hen House, the liquid soap dispenser push lever is at about 50 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   Due to its height and location, the Plaintiff required assistance from another person to give his

some soap to wash his hands.

### INTERIOR FOOD SERVICE AREA AND ENTRANCE DOOR--PANERA

qq.   The force needed to open the entrance door to Panera is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening the entrance door to Panera, and he required assistance to open this door.

rr.   The soda machine dispenser keys in Panera are about 53.5 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff observed the height of these dispenser keys.

### MEN'S RESTROOM--PANERA

ss.   The force needed to open the entrance door to Panera is about 9 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door, and he required assistance to enter the restroom.

tt.   On his July 12, 2018 visit, in the men's restroom in Panera, a trash can was in the restroom door pull side maneuvering clearance in a front approach perpendicular to the doorway, which trash can reduced such minimum required clearance to less than 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff encountered this trash can in this maneuvering clearance space.

uu.   In the men's restroom in Panera, a door pull to the accessible toilet compartment

is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff encountered this barrier.

vv.   In the men's restroom in Panera, the urinal clear floor or ground space is 24 inches and less than the minimum required width of 30 inches for a forward approach to the urinal, in violation of Federal Law 2010, ADAAG § 305.5.   The Plaintiff observed this condition.

ww.      In the men's restroom in Panera, the centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   Due to its location, the Plaintiff could not reach the toilet paper dispenser from a normal sitting position on the toilet.

xx.   In the men's restroom in Panera, the paper towel dispenser outlet is about 56 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   In his wheelchair, the Plaintiff tried but could not reach the outlet to the paper towel dispenser.

yy.   In the men's restroom in Panera, the toilet seat cover dispenser outlet is about 63 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   In his wheelchair, the Plaintiff tried but could not reach the outlet to the toilet seat cover dispenser.

**WOMEN'S RESTROOM--PANERA**

zz.   The force needed to open the entrance door to Panera is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the

21

continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   The Plaintiff had difficulty opening this door, and he required assistance to enter the restroom.

aaa.   In the women's restroom in Panera, the lavatory clear floor or ground space width is about 30 inches and less than the minimum required width of 36 inches to allow a forward approach to the alcove lavatory (a lavatory confined on all or part of three sides where the depth exceeds 24 inches) in violation of Federal Law 2010, ADAAG §§ 305.7.1 and 305.7.2.   The Plaintiff observed this condition.

bbb.   In the women's restroom in Panera, the toilet paper dispenser centerline is about 13 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff observed this condition.

ccc.   In the women's restroom in Panera, the distance from the toilet centerline is not between a minimum of 16 inches and a maximum of 18 inches, in violation of Federal Law 2010, ADAAG § 604.2.   The Plaintiff observed this condition.

ddd.   In the women's restroom in Panera, the toilet seat cover dispenser outlet is 64 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff observed this condition.

41.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

42.     The discriminatory violations described in paragraph 40 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

43.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

44.     Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their places of public accommodation or commercial facilities in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

45.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

46.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

47.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

48.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

49.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

50.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter Hen House, Panera, and the Deer Creek Marketplace and adjacent parking areas and walking surfaces at the Deer Creek

Marketplace, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

51.   Millions of Americans require the use of a wheelchair for mobility.

52.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

53.   Removing existing architectural barriers to access under Title III of the ADA will be good for the business of Hen House, Panera, and the Deer Creek Marketplace.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 <u>et</u> <u>seq</u>.

b.     Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to require the Defendants to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.


## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,


s/Robert J. Vincze
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*